**MARVIN BROWN, Inc. v. MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS.**

**No. 12471.**

Court of Civil Appeals of Texas. Galveston.

Feb. 12, 1953.

Rehearing Denied March 19, 1953.

Joe G. Fender, Cyril J. Smith, of Houston, for appellant.

Vinson, Elkins & Weems, C. E. Bryson, Ben H. Rice, III, of Houston, for appellee.

CODY, Justice.

This is a suit for overcharges on shipments of 35 carloads of cement, which were moved during the months of August and September, 1949, from the plant of the Ideal Cement Company in Houston, to Dumont. The waybill covering each shipment showed that Ideal Cement Company (which during some of the earlier shipments had a different name) was the consignor, and that Marvin Brown, Inc. was the consignee. *Dumont* is the railroad tariff name of the municipality of South Houston, and the Dumont depot is ten miles distant from the freight depot in Houston.

The total amount of the freight charges collected by the carrier upon said shipments was $3,988.47. It was not disputed that the charges so collected would be the correct charges, provided it was lawful to apply the *line-haul*, point-to-point, commodity rate on cement from the "tariff" station Houston, to the "tariff" station Dumont, which was prescribed by the Railroad Commission of Texas. Said rate was shown as amounting to 7 cents per hundred pounds in Texas Lines' Tariff, plus increases.

It was the plaintiff-consignee's contention, however, that said rate did not lawfully apply, but that switching charges, amounting to a total of $933.15, were lawfully applicable to said shipments. Plaintiff accordingly sued to recover alleged overcharges in the sum of $3,055.32, plus interest thereon, plus attorneys' fees in the sum of $700, plus penalties amounting to a minimum of $4,375 to a maximum of $17,500.

Upon a trial to the court without a jury, the court rendered judgment for the defendant carrier, that plaintiff take nothing. Plaintiff has appealed. No request was made of the court to file conclusions of fact and law. However, there is, we believe, no dispute between the parties as to the facts, the only dispute being as to the correct application of the rates which lawfully apply to said shipments, which were, of course, intrastate shipments.

Appellant predicates this appeal upon a single point, reading: "The judgment of the trial court should be reversed and judgment rendered in favor of appellant against appellee for (1) damages and overcharges of $3,055.32 plus interest, (2) statutory attorney fees of $700 and (3) statutory penalties of $4,375, the minimum, to $17,500, the maximum, because appellee assessed and collected from appellant for the 35 shipments involved the full line-haul cement rate from the station Houston, Texas, to the station Dumont, Texas, when appellee's charges should have been limited to the maximum prescribed by the Railroad Commission of Texas for such transportation from Ideal Cement Company in Houston via Rambler Spur to station Dumont."

In order to understand the force of appellant's point it is necessary to make the following explanation: The distance between the freight depot in Houston, and the depot in Dumont, is ten miles. A shipment of freight which is moved from Houston to Dumont must pass through Rambler Spur, which is seven miles from the freight depot in Houston, and three miles from the depot in Dumont. Until May, 1948, Rambler Spur occupied the status of a regular station in its own right, and was so recognized in the Texas Lines tariffs. But in May, 1948, the railroads enlarged and extended their Houston switching limits or terminal area so as to include Rambler Spur. This action had the effect of changing the status of Rambler Spur from that of a regular station to that of a team track, where shipments of freight are delivered to the public, and accepted from the public for handling by the railroad. And such status of Rambler Spur is now made to appear in the Texas Lines tariffs.

Furthermore, there are duly prescribed rates for the movement of freight between points within the switching limits of the larger Texas cities. Such points are principally industrial tracks and team tracks. The rate for Houston is found in *Item 1050* of the general rules tariff. It is a point-to-point general commodity (and so includes cement) rate of $8.91, plus increases. Distance does not alter the rate. It applies between the industrial plant, Ideal, and the team track, Rambler Spur. This is not denied by anyone. Therefore, is is certain that appellant could have had moved the shipments here involved from Ideal Cement Co. to Rambler Spur, under that tariff.

But the question here presented for determination is whether appellant could have said shipments transported by the railroad from Rambler Spur to Dumont on a separate rate applicable between those points. Appellant insists there is such a rate applicable for use, whereas appellee denies this. If appellant is correct in this contention, then appellant's foregoing point must be sustained. Of course, if the rate between origin and an intermediate point, and the rate between such intermediate point and destination is less than the rate between origin and destination, then ordinarily it will be held that the shipper is entitled to the lesser rates. We hold that such contention is not tenable, and that the court correctly rendered judgment for appellee.

The rate which appellant contends is applicable between Rambler Spur and Dumont is found in *Item 950*, as amended, of the general rules tariff. Said *Item 950*, Texas Circular No. 1-G, reads: "On all classes and commodities, in carloads and less than carloads, moving between industries and other points within the switching (yard) or city limits of same city of town, or suburbs thereof; *also between points in said switching or city limits and points (except regular stations) without same, provided such points without are not more than five miles distant from the geographical center of such city or town; being shipments originating or terminating within the same town, and shipments between the city and its suburbs; or from one suburb to another, the charge shall be as shown below:* * * *". (Emphasis supplied.)

The emphasis which we have supplied to *Item 950* is the portion thereof which appellant contends is applicable, so that shipments can be made directly between

Rambler Spur and Dumont, and vice versa, for the specified rate. We disallow the contention, and overrule appellant's point.

To us, at any rate, the language itself makes it clear that the provision was not intended to be applied between a team track within the switching limits of a city, and regular stations without such terminal area, viz., "(except regular stations)." Dumont is a regular station, in its own right, and is so shown in the Texas Lines tariffs. But upon the trial other cogent reasons were shown which made it clear that the Commission could not have intended the language used in its order, which now appears as *Item 950,* to prescribe rates for movements of freight between a regular station, such as Dumont, and a team track within the switching limits of another regular station, such as Houston. One such reason is that it is a universal practice which prevails in the operation of all railroads for the switching crew of the handling carrier to deliver all shipments to the team tracks, on the one hand, and to move all shipments received by the carrier at such team tracks on the other, to the freight yard. Under such practice a shipment of freight originating at Rambler Spur would be moved by the switching crew to the freight yard at Houston, and then moved from Houston to Dumont by the line-haul crew, and vice versa. So universal and long-standing is such practice that provisions therefor are incorporated in the contracts between the carriers and the operating unions. We are not suggesting that the Railroad Commission might not order such practice changed. But it is not likely that any such change would be made except after a hearing. Of course the Commission has the power arbitrarily to put into force a rate which would not take into consideration the service actually performed by the carrier, which would be valid until set aside. But it will not lightly be supposed that the Commission intended to do so. Actually, trucks would be used by shippers for the handling of freight between Rambler Spur and Dumont, if occasion for such a movement arose.

It was further shown upon the trial by the testimony of Mr. C. R. McNamee, Chief of the Rate Division of the Railroad Commission, that the Commission intentionally established specific rates for cement between all stations of origin and destination in Texas, in order to avoid discrimination by interstate cement shippers against intrastate shippers, and at the same time to avoid using the complicated mileage —junction point—basing formula used in interstate commerce. Furthermore, Section No. 7, of Item No. 230 of Texas Lines Tariff No. 58-C (which names distance and specific rates on cement, carloads), reads: "7. The specific rates published in Rate Section No. 2 from Atco, Cementville, Eagle Ford, El Paso, Harrys, Houston, Longhorn and North Fort Worth, to all other Texas Points are recognized by the Railroad Commission of Texas as the legal rates to be observed and applied from such points. It is understood, however, that when new stations are established, present stations abolished, and (or) new lines constructed, which change the basis for applying the prescribed mileage scales under the formula as shown in Item No. 210 (as well as the specific rates shown in Rate Section No. 2), changes justified thereby will be published within a reasonable time and on five days' notice. Until such changes so become applicable the rates published in Rate Section No. 2 will continue to apply. In the event any of such rates are found to be in error, correction will be made as soon as possible on five days' notice."

As has often been held, the orders of the Railroad Commission have the force and effect of statutes. And in their construction the same canons will be applied as in construing the meaning of statutes. It is elementary in such construction that the specific prevails over the general.

The judgment is affirmed.